UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **Fabricio Ferreira Gomes,** | Case No. _____ |
| Petitioner, | |
| v. | **PETITION FOR WRIT OF HABEAS CORPUS** |
| Patricia Hyde, Acting Director of Boston Field Office, U.S. Immigration and Customs Enforcement; Kristi Noem, Secretary of the U.S. Department of Homeland Security; | **ORAL ARGUMENT REQUESTED** |
| Respondents. | |

## INTRODUCTION

1. Petitioner Fabricio Fereira Gomes is a Brazilian national who has applied to United States Citizenship and Immigration Services for T Visa status as a victim of a severe form of labor trafficking. Concurrent with that application and in line with the T Visa implementing regulations, Petitioner filed an I-192 waiver which, if granted, would forgive inadmissibility stemming from his immigration history, including a removal order issued against him on October 9, 2001. Mr. Gomes was previously detained by Immigration and Customs Enforcement in 2013. However, he was released on an Order of Supervision because he was not an immigration enforcement priority. He has complied with that Order of Supervision for 12 years, never missing an appointment or violating it in any other way.

2. On February 5, 7 and 11, 2025, Petitioner checked in with ICE by email from his attorney on the date he was required to do so, and ICE responded that he must present himself on

1

February 12, 2025 for enrollment into a new monitoring system. Due to a conflict on counsel part the date was moved to February 25. Petitioner's counsel is aware that individuals attending similar appointments are being detained. On information and belief, ICE intends to detain and remove Petitioner.

3. On information and belief ICE officer are reviewing for re-detention the case of any noncitizen reporting on the nondetained docket. If ICE determines removal appears significantly likely in the reasonable foreseeable future, the arrest may proceed.

4. If Petitioner is removed from the United States, he will be rendered ineligible for the T Visa for which he has applied even though he is presently eligible notwithstanding his removal order. Despite that eligibility, if he removed, he will be permanently deprived of that adjudication.

5. Accordingly, to vindicate Petitioner's statutory and regulatory rights, this Court should grant the instant petition for a writ of habeas corpus.

6. Absent an order from this Court, Petitioner will be removed prior to the adjudication of his application for a T Visa and will be rendered ineligible for that status by operation of law.

7. Petitioner asks this Court to prohibit ICE from removing Petitioner from the Commonwealth.

8. Petitioner further asks this Court to find that Petitioner's detention is unlawful and order that ICE release him from custody and not remove him from the United States until his application for a T visa is approved.

## JURISDICTION

9. This action arises under the Constitution of the United States and the Immigration and

Nationality Act (INA), 8 U.S.C. § 1101 *et seq*.

10. This Court has subject matter jurisdiction under 28 U.S.C. § 2241 (habeas corpus), 28 U.S.C. § 1331 (federal question), and Article I, § 9, cl. 2 of the United States Constitution (Suspension Clause).

11. This Court may grant relief under the habeas corpus statutes, 28 U.S.C. § 2241 *et. seq*., the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq*., and the All Writs Act, 28 U.S.C. § 1651.

## VENUE

12. Venue is proper because Petitioner is in the custody of the offices of Immigration and Customs Enforcement in Burlington, Massachusetts, which is within the jurisdiction of this District by virtue of his Order of Supervision.

13. Venue is also proper in this District because Respondents are officers, employees, or agencies of the United States and a substantial part of the events or omissions giving rise to his claims occurred in this District and Petitioner resides in this District and no real property is involved in this action. 28 U.S.C. § 1391(e).

## REQUIREMENTS OF 28 U.S.C. § 2243

14. The Court must grant the petition for writ of habeas corpus or issue an order to show cause (OSC) to the respondents "forthwith," unless the petitioner is not entitled to relief. 28 U.S.C. § 2243. If an order to show cause is issued, the Court must require respondents to file a return "within *three days* unless for good cause additional time, not exceeding twenty days, is allowed." *Id.* (emphasis added).

15. Courts have long recognized the significance of the habeas statute in protecting individuals from unlawful detention. The Great Writ has been referred to as "perhaps the

3

most important writ known to the constitutional law of England, affording as it does a *swift* and imperative remedy in all cases of illegal restraint or confinement." *Fay v. Noia*, 372 U.S. 391, 400 (1963) (emphasis added).

## PARTIES

16. Petitioner Fabricio Fereira Gomes is a Brazilian national who is a survivor of labor trafficking and an applicant for a T Visa. In 2013, he was taken into Immigration and Customs Enforcement ("ICE") custody but released on an Order of Supervision thereafter. He has been ordered to present himself in person at ICE's Boston Field Office in Burlington, MA on February 12, 2025.

17. Respondent Patricia Hyde is sued in her official capacity as the Acting Director of the Boston Field Office of U.S. Immigration and Customs Enforcement. Respondent Hyde is a legal custodian of Petitioner and has authority to release him.

18. Respondent Kristi Noem is sued in her official capacity as the Secretary of the U.S. Department of Homeland Security (DHS). In this capacity, Respondent Noem is responsible for the implementation and enforcement of the Immigration and Nationality Act, and oversees U.S. Immigration and Customs Enforcement, the component agency responsible for Petitioner's detention. Respondent Noem is a legal custodian of Petitioner.

## STATEMENT OF FACTS

19. Petitioner is a 47-year-old citizen of Brazil. He has two U.S. citizen daughters, aged 18 and 20, whom he has raised in this country their entire lives. He has never been convicted of a crime in the United States or anywhere else.

20. In 2001, at the age of 23, Petitioner entered the United States without inspection and was encountered by the then-Immigration and Nationality Service and placed into removal proceedings via a Notice to Appear that did not contain a time or date of any future hearing.

21. He was released from custody on a bond. He did not receive the notice of hearing for his removal proceedings. His EOIR file reflects that the notice of hearing was returned to the court as undeliverable.

22. In 2013, Petitioner was detained by Immigration and Customs Enforcement, but released and placed on an Order of Supervision. He has complied with that Order of Supervision at all times for the past 12 years.

23. Petitioner has made various and ongoing efforts to address his immigration status in this country, including filing a motion to reopen his removal proceedings, appealing the denial of the motion to reopen his removal proceedings and filing a second motion to reopen his proceedings as the law regarding Notices to Appear lacking a date and time developed.

24. In 2024, Petitioner's immigration counsel discovered that Petitioner had survived a severe form of labor trafficking, rendering him eligible to seek T nonimmigrant status pursuant to 8 U.S.C. §1101(a)(15)(T).

25. On January 21, 2025, Petitioner (by and through counsel) filed a detailed report regarding his experiences of labor trafficking to the U.S. Department of Labor.

26. On January 22, 2025, Petitioner (by and through counsel) filed a form I-914 Application for T Nonimmigrant Status alongside a form I-192 Application for Advance Permission to Enter as Nonimmigrant, requesting a waiver of all applicable admissibility grounds.

27. On February 4, 2025, immigration counsel for Petitioner emailed ICE as a routine check-in procedure. Counsel was instructed to have Petitioner appear in person at ICE's Boston Field Office, located in Burlington, Massachusetts, on February 12, 2025 "to be enrolled into [ICE]'s CART reporting terminal." Counsel requested a brief continuance to March 4, 2025 so that she could attend the appointment with Petitioner, given a conflict on the 12th and some work-related travel scheduled for later in the month. An ICE officer responded, "That's a month after his reporting date. He should come sooner." After further emails, it was agreed that Petitioner would check in on February 26, 2025.

28. On February 10, 2025, it came to Petitioner's counsel's attention that some individuals reporting in to enroll in ICE's "CART" system were in fact detained. On information and belief, two other noncitizens who reported for "CART" enrollment were taken into custody on February 10. This raises the inference that Petitioner is being called in for detention and removal.

## LEGAL FRAMEWORK

29. T nonimmigrant status is described at 8 U.S.C. §1101(a)(15)(T) as being available to (as relevant here) a noncitizen who has a been a victim of a severe form of trafficking in persons, who is physically present in the United States on account of such trafficking, has complied with any reasonable request for assistance in the Federal, State or local investigation or prosecution of acts of trafficking and would suffer extreme hardship involving unusual or severe harm upon removal. The relevant purpose of this provision and terminology are provided in the Trafficking Victims Protection Act, 22 U.S.C. § 7101-2.

30. Although the T visa is available to noncitizens physically present in the United States, it is not available to those who survived trafficking if he or she is outside of the United States. This is because a core requirement of the T visa classification is that the noncitizen be "physically present … on account of such trafficking." 8 U.S.C. §1101(a)(15)(T)(i)(II). This requirement has been interpreted to include noncitizens who were subject to trafficking in the past and whose presence in the United States is directly related to that victimization "regardless of the length of time that has passed between the trafficking and the filing of the Application for T nonimmigrant status." 8 C.F.R. § 214.207(a)(3)-(4). However, the regulations make clear that departure from the United States, including removal at any time after the act of trafficking renders an individual not present as a result of trafficking. 8 C.F.R. § 214.207(b).

31. A noncitizen is eligible to apply for T nonimmigrant status even if he has a removal order against him. Indeed, to the extent that any immigration history may render a noncitizen inadmissible, such inadmissibility may be waived by the concurrent (or later) filing of waiver pursuant to 8 U.S.C. §1182(d)(13) and (d)(3)(A)(ii).

32. In 2011, ICE issued Policy 10076.1: Prosecutorial Discretion: Certain Victims, Witnesses and Plaintiffs, setting forth agency policy that agents should exercise all appropriate prosecutorial discretion to minimize any effect that immigration enforcement could have on the willingness and ability of victims to call police and pursue justice. This policy also stated that it was against ICE policy to remove individuals in the midst of a legitimate effort to protect their civil rights or civil liberties and reminding ICE employees of the provisions of the Trafficking Victims Protection Act.

33. In 2021, ICE issued directive 11005.3: Using a Victim-Centered Approach with Noncitizen Crime Victims. This directive, which was made publicly available, stated that it was ICE's policy to "exercise prosecutorial discretion in appropriate circumstances to facilitate access to justice and victim-based immigration benefits by noncitizen crime victims", noting that the "duty to protect and assist noncitizen crime victims is enshrined in, among other laws, the Violence Against Women Act (VAWA), the Trafficking Victims Protection Act (TVPA) and their respective reauthorizations." Among other things, ICE employees were directed to, absent exceptional circumstances, refrain from taking civil immigration enforcement action against applicants for victim-based immigration benefits.

34. On January 31, 2025, it was reported on social media that ICE had issued new policy guidance to its employees entitled "Interim Guidance on Civil Immigration Enforcement Actions Involving Current or Potential Beneficiaries of Victim-Based Immigration Benefits." According to this leaked document, ICE was rescinding Directive 11005.3 and ICE Policy 10076.1. This "Interim Guidance" has not been officially posted for public review or otherwise shared in its entirety.

## CLAIMS FOR RELIEF

### COUNT ONE
**Violation of 8 U.S.C. §1101(a)(15)(T) (Immigration and Nationality Act), 22 U.S.C. § 7101-2 (Trafficking Victims Protection Act) and Implementing Regulations**

35. The allegations in the above paragraphs are realleged and incorporated herein.

36. The regulations implementing the Immigration and Nationality Act ("INA") and Trafficking Victims Protection Act ("TVPA") specifically provide that applicants with final orders of removal may file an application for T nonimmigrant status with USCIS. 8

8

C.F.R. § 214.204(b)(2). The regulations provide that if USCIS determines that the application is bona fide, the final order of removal will be automatically stayed. 8 C.F.R. § 214.204(b)(2)(iii).

37. In implementing the TVPA, ICE has had a policy for nearly 14 years of discouraging enforcement action against those seeking to vindicate their rights under its provision.

38. Actively seeking to detain Petitioner shortly after he, in reliance on the above regulations, reported his experience of labor trafficking to the relevant law enforcement agency and sought T nonimmigrant status violates the TVPA and the INA.

## COUNT TWO
### Violation of the Administrative Procedures Act

39. The allegations in the above paragraphs are realleged and incorporated herein.

40. The Administrative Procedures Act (APA) forbids agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). A court reviewing agency action "must assess . . . whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment"; it must "examin[e] the reasons for agency decisions—or, as the case may be, the absence of such reasons." *Judulang v. Holder*, 565 U.S. 42, 53 (2011) (quotations omitted).

41. Petitioner's detention and any efforts to remove Petitioner under the facts alleged here, including facts showing ICE planned to detain him after he had reported his survival of labor trafficking and availed himself of the procedures for application for T nonimmigrant status and applied for the relevant waiver of any and all inadmissibility grounds applicable, are and would be arbitrary and capricious under the APA.

42. The APA also sets forth rule-making procedures that agencies must follow before adopting substantive rules. See 5 U.S.C. § 553. The Department of Homeland Security followed these rulemaking procedures to establish a Bona Fide Determination Process that would stay removal, to provide for a waiver of nearly all grounds of inadmissibility, and to direct applicants to submit that waiver at the time of application. *See* 89 Fed. Reg 34864-01.

43. Specifically, ICE's sudden and secretive issuance of interim policy guidance rescinding ICE Directive 11005.3 and ICE Policy 10076.1 improperly alters substantive rules without notice-and-comment rulemaking, in violation of the APA.

## COUNT THREE
**Violation of Fifth Amendment Right to Due Process with regard to T Visa application**

44. The allegations in the above paragraphs are realleged and incorporated herein.

45. Adjudication of the T Visa and any accompanying waiver of inadmissibility is delegated to USCIS. 8 C.F.R. §214.200 et seq.

46. To be eligible for T Visa status, the applicant must be physically present in the United States. 8 C.F.R. §214.207(a).

47. If ICE may detain and remove a T Visa applicant while his application is pending before USCIS, it effectively co-opts the adjudication of that application and can functionally deny it by rendering the applicant ineligible. This violates his procedural due process rights.

## COUNT FOUR
**Violation of Fifth Amendment Right to Due Process with regard to liberty**

48. The allegations in the above paragraphs are realleged and incorporated herein.

49. Other than as punishment for a crime, due process permits the government to take away liberty only "in certain special and narrow nonpunitive circumstances . . . where a special justification . . . outweighs the individual's constitutionally protected interest in avoiding physical restraint." *Zadvydas* v. *Davis*, 533 U.S. 678, 690 (2001) (quotations omitted). Such special justification exists only where a restraint on liberty bears a "reasonable relation" to permissible purposes. *Jackson* v. *Indiana*, 406 U.S. 715, 738 (1972); see also *Foucha* v. *Louisiana*, 504 U.S. 71, 79 (1992); *Zadvydas*, 533 U.S. at 690. In the immigration context, those purposes are "ensuring the appearance of aliens at future immigration proceedings and preventing danger to the community." *Zadvydas*, 533 U.S. at 690 (quotations omitted).

50. Those substantive limitations on detention are closely intertwined with procedural due process protections. *Foucha*, 504 U.S. 78-80. Noncitizens have a right to adequate procedures to determine whether their detention in fact serves the purposes of ensuring their appearance or protecting the community. *Id.* at 79; *Zadvydas*, 533 U.S. 692; *Casas-Castrillon* v. *Dep't of Homeland Sec.*, 535 F.3d 942, 949 (9th Cir. 2008). Where laws and regulations fail to provide such procedures, the habeas court must assess whether the noncitizen's immigration detention is reasonably related to the purposes of ensuring her appearance or protecting the community. *Zadvydas*, 533 U.S. at 699.

51. Because Petitioner may be detained without any determination that he poses a danger or flight risk, and because he in fact poses no danger or flight risk, his anticipated detention violates due process.

**PRAYER FOR RELIEF**

Wherefore, Petitioner respectfully requests this Court to grant the following:

(1) Assume jurisdiction over this matter;

(2) Issue an Order to Show Cause ordering Respondents to show cause why this Petition should not be granted within three days.

(3) Order Defendants to coordinate with USCIS to expedite processing of the pending T Visa application;

(4) Order that Defendants not remove Petitioner from the Commonwealth of Massachusetts;

(5) Declare that Petitioner's detention violates the Due Process Clause of the Fifth Amendment, 8 U.S.C. § 1101(a)(15)(T) (Immigration and Nationality Act), 22 U.S.C. § 7101-2 (Trafficking Victims Protection Act), 8 C.F.R. § 214.000 et seq., 214.205, 214.207(a)-(b), 214.214(b).

(6) Issue a Writ of Habeas Corpus ordering Respondents to release and/or not detain Petitioner immediately;

(7) Award Petitioner attorney's fees and costs under the Equal Access to Justice Act, and on any other basis justified under law; and

(8) Grant any further relief this Court deems just and proper.

Respectfully Submitted
Fabricio Fereira Gomes, Petitioner
By and through:

s/ *Annelise M. Jatoba de Araujo*

_____
Annelise M. Jatoba de Araujo
Araujo & Fisher, LLC

75 Federal St, Ste 910
Boston, MA 02110
T: 617-716-6400
C: 419-494-3051
F: 617-716-6403
*Counsel for Petitioner*

Dated: February 24, 2025

## **VERIFICATION PURSUANT TO 28 U.S.C. § 2242**

I represent Petitioner, Fabricio Fereira Gomes, and submit this verification on his behalf. I hereby verify that the factual statements made in the foregoing Petition for Writ of Habeas Corpus are true and correct to the best of my knowledge.

Dated this 24th day of February, 2025.

*s/ Annelise M. Jatoba de Araujo*
_____
Annelise M. Jatoba de Araujo