UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| FABRICIO FERREIRA GOMES,<br><br>                    Petitioners,<br><br>        v.<br><br>PATRICIA HYDE, Acting Director of Boston Field Office, U.S. Immigration and Customs Enforcement; KRISTI NOEM, Secretary of U.S. Department of Homeland Security,<br><br>                    Respondents. | Civil Action No. 1:25-cv-10455-FDS |

**RESPONDENTS' MEMORANDUM IN OPPOSITION TO PETITIONER'S
PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C § 2241**

Respondents Patricia Hyde and Kristi Noem,[1] by and through their attorney, Leah B. Foley, United States Attorney for the District of Massachusetts, respectfully submit this opposition to the Petition for Writ of Habeas Corpus filed by Petitioner Fabricio Ferreira Gomes ("Petitioner"). Doc. No. 1, Petition for Habeas Corpus ("Petition"). Respondents respond to the Petition as contemplated by Rules 4 and 5 of the Federal Rules Governing Section 2254 cases.[2]

---

[1] Since Petitioner is now detained as of February 26, 2025, both these Respondents should be dismissed and the Superintendent of Plymouth County House of Correction, Antone Moniz, substituted as the only named Respondent. *See Rumsfeld v. Padilla*, 542 U.S. 426, 447 (2004): *Vasquez v. Reno*, 233 F.3d 688, 695 (1st Cir. 2000).

[2] *See* Rule 1(b) ("The district court may apply any or all of these rules to a habeas corpus petition…"); *Vieira v. Moniz*, No. CV 19-12577-PBS, 2020 WL 488552, at *1 n.1 (D. Mass. Jan. 30, 2020) (evaluating the Government's response and dismissing habeas petition under Section 2254 Rules).

## INTRODUCTION

Petitioner, who is lawfully detained by U.S. Immigration and Customs Enforcement ("ICE"),[3] is a Brazilian national with a final order of removal entered against him approximately twenty years ago. *Id.,* ¶¶ 20, 23. Petitioner asks this Court to stay his removal while he seeks relief from removal through the filing of a Form I-914, Application for T Nonimmigrant Status ("T-visa application") and an inadmissibility waiver request that he apparently filed with the U.S. Citizenship and Immigration Service ("USCIS") on or about January 22, 2025. *Id.,* ¶26.

However, not only is Petitioner's current detention lawful under 8 U.S.C. § 1231(a)(6), but this Court lacks subject matter jurisdiction to enter such an order per 8 U.S.C. § 1252(g) which bars district court review of any "decision or action by [Immigration and Customs Enforcement ("ICE")] to … execute removal orders" against noncitizens with final orders of removal. As explained in greater detail below, this Court should deny Petitioners' prayers for relief and decline to issue the writ of habeas corpus as requested.

## FACTUAL AND PROCEDURAL BACKGROUND

Petitioner entered the United States without inspection in 2001. Pet., Doc. No. 1, ¶ 20. Although the Petition glosses over the facts as it relates to his final order of removal, it appears that he was ordered removed by the Boston Immigration Court for his failure to appear at his scheduled immigration proceedings. *Id.,* ¶ 21. In 2013, Petitioner was detained by ICE, but later released on an Order of Supervision ("OSUP"). *Id.,* ¶ 22. Since that time, apparently, Petitioner has attempted to challenge his removal order by filing an initial motion to reopen ("MTR"), the denial of which was appealed to the Board of Immigration Appeals ("BIA") without success. *Id.,*

---

[3] As described more fully herein, Petitioner's detention is lawful under 8 U.S.C. § 1231(a).

¶ 23. Thereafter, Petitioner filed another MTR ("Second MTR") with the immigration court based on the failure of the Notice to Appear to list a date and time for Petitioner to appear for his proceedings. *Id.* What happened with that Second MTR is omitted from the Petition. Apparently, the Petitioner never filed with the First Circuit Court of Appeals a petition for review ("PFR") challenging his removal order. Rather, last month, on or about January 22, 2025, Petitioner claims to have filed his T-visa application with USCIS seeking relief from removal by claiming he was a victim of severe labor trafficking. *Id.,* ¶ 25.

On February 4, 2025, Petitioner was instructed to appear at Boston's ICE office in Burlington, Massachusetts, to be enrolled in ICE's Compliance Assistance Reporting Terminal ("CART"). *Id.,* ¶ 27. On February 26, 2025, Petitioner did appear at ICE's office in Burlington, and he was detained. On that date, Petitioner filed an Emergency Motion for Immediate Release. *See* Doc. No.8.

## **ARGUMENT**

A. **Petitioner is Lawfully Detained and this Court Lacks Subject Jurisdiction over Petitioner's Challenge to his Final Order of Removal and his Request for a Stay of Removal.**

As explained below, this Court lacks jurisdiction to review Petitioner's final order of removal. Additionally, this Court lacks jurisdiction to review or interfere with ICE's decision to execute Petitioner's removal orders by entering a stay of removal as requested.

**1. Petitioner has Been Lawfully Re-Detained.**

ICE's detention of Petitioner is authorized by statute and regulation and comports with the Constitution as well. ICE's detention authority stems from 8 U.S.C. § 1231(a). By statute, ICE is required to detain an individual for 90 days post-removal order. *See* 8 U.S.C. § 1231(a)(2). Because Petitioner's prior order of removal was final in apparently 2001, Petitioner is now outside

of the 90-day removal period during which the government "shall detain" the individual. 8 U.S.C. § 1231(a)(2). Petitioner was permitted to remain in the United States under an OSUP, as authorized by 8 U.S.C. § 1231(a)(3). However, 8 U.S.C. § 1231(a)(6) allows the government to detain an alien ordered removed beyond the removal period if the individual is inadmissible under § 1182 (that is the case here as Petitioner was neither admitted nor paroled in the United States upon entry), removable under § 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4), or has been determined to be a risk to the community or unlikely to comply with the order of removal. This statute provided ICE with the authority to detain Petitioner on February 26, 2025 as he is inadmissible to the United States.

Further, under *Zadvydas v. Davis*, 533 U.S. 678 (2001), Petitioner may be held in confinement without concern of violating the Constitution until it has been determined that there is "no significant likelihood of removal in the reasonably foreseeable future." *Id*. at 701. The *Zadvydas* Court concluded that there exists a presumptively reasonable post-removal detention period of six months under § 1231(a)(6). *Id.* However, "[t]his six-month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* Moreover, § 1252(g) may bar claims arising from "brief detentions" in certain circumstances. *Kong v. United States*, 62 F.4th 608, 618 (1st Cir. 2023); *see also Tazu v. AG United States*, 975 F.3d 292, 297-99 (3d Cir. 2020). Certainly, a Petitioner who has been detained only three (3) days as here does not run counter to *Zadvydas* and any request for relief is premature. *See Farah v. U.S. Att'y Gen.,* 12 F.4th 1312, 1332–33 (11th Cir. 2021) (Explaining that "[i]f after six months he is still in custody and has not been removed from the United States, then he can challenge his detention under section 1231(a). But until then, his detention is presumptively reasonable under *Zadvydas*.")); *Julce v. Smith*, No. CV 18-10163-FDS, 2018 WL 1083734, at *5 (D. Mass. Feb. 27, 2018) (Habeas petition deemed "premature at best" as it was filed after three months of post-final order detention).

,

The regulatory procedures for detaining an individual past the removal period are found in 8 C.F.R. § 241.4. This regulation specifies a process for detaining people beyond the removal period and for releasing them thereafter. 8 C.F.R. § 241.4(d)–(k). It also specifies a process for returning a person, once released, back to detention. 8 C.F.R. § 241.4(l). *Alam v. Nielsen*, 312 F. Supp. 3d 574, 582 (S.D. Tex. 2018). The government is permitted to revoke the release of an individual under an OSUP in its discretion. Section 241.4(*l*) explains that:

> A district director may revoke release of an alien when, in the district director's opinion, revocation is in the public interest and circumstances do not reasonably permit referral of the case to the Executive Associate Commissioner. Release may be revoked in the exercise of discretion when, in the opinion of the revoking official:
> (i) The purposes of release have been served;
> (ii) The alien violates any condition of release;
> (iii) It is appropriate *to enforce a removal order* or to commence removal proceedings against an alien; or
> (iv) The conduct of the alien, or any other circumstance, indicates that release would no longer be appropriate.

8 C.F.R. § 241.4(*l*) (emphasis added).

A district court judge in Texas described 8 C.F.R. § 241.4 as a regulation that "prescribes in considerable detail a set of custody reviews, release procedures, and other processes, but through that forest has been cut that short and straight path for immigrants whom the government is ready and able to remove." *Alam*, 312 F. Supp. 3d at 582. That court noted that ICE officials have discretion to revoke a person's release when "[i]t is appropriate to enforce a removal order." *Id.* (citing 8 C.F.R. § 241.4(l)(2)(iii)). In turn, "the possibility of 'prompt removal' suspends the custody reviews that the regulation otherwise requires." *Id.* (citing 8 C.F.R. § 241.4(k)(3).

When ICE revokes release of an individual under 8 C.F.R. § 241.4(l), ICE must conduct an "informal interview" to advise the individual of the basis for revocation and must also serve the

5

individual with a written notice of revocation. If ICE determines revocation remains appropriate after conducting the informal interview, then ICE will provide notice to the individual of a further custody review that "will ordinarily be expected to occur within approximately three months after release is revoked." 8 C.F.R. § 241.4(l)(3). Those procedures were followed in this instance and, on this backdrop, Petitioner remains lawfully detained under 8 U.S.C. § 1231(a)(6).

### 2. This Court Lacks Jurisdiction to Stay Petitioner's Removal from the United States.

Petitioner requests this Court to enter an order staying his removal until USCIS decides his T-visa application. This Court is without jurisdiction to offer such relief as 8 U.S.C. § 1252(g) precludes a district court from staying orders removal. Section 1252(g) states that "no court shall have jurisdiction to hear any cause or claim by ... any alien arising from the decision or action by [ICE] to ... *execute removal orders against any alien*." (emphasis added). This provision applies "notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title." *Id.*

Courts within this district, and around the country, routinely hold that they lack jurisdiction to enter an order staying removal based on section 1252(g)'s plain language. *See e.g., Tejada v. Cabral,* 424 F. Supp. 2d 296, 298 (D. Mass. 2006) ("Congress made it quite clear that all court orders regarding alien removal—be they stays or permanent injunctions—were to be issued by the appropriate courts of appeals."); *Aziz v. Chadbourne*, No. CIV.A.07-11806-GAO, 2007 WL 3024010, at *1 (D. Mass. Oct. 15, 2007) ("[a]ny stay of the final order of removal would squarely interfere with the execution of the removal order."); *Martin v. U.S. Immigration & Customs Enf''t,* No. CIV.A. 13-11329-DJC, 2013 WL 3282862, at *3 (D. Mass. June 26, 2013) ("this Court lacks authority to issue a stay of a final order of removal."); *Nelson v. Hodgson*, No. CIV.A. 14-10234-DJC, 2014 WL 2207621, at *2 (D. Mass. May 27, 2014) (the "provisions of the REAL ID Act

preclude this court from entering an order staying petitioner's removal."); *Doe v. Smith*, No. CV 18-11363-FDS, 2018 WL 4696748, at *3 (D. Mass. Oct. 1, 2018) (same); *Compere v. Riordan*, 368 F. Supp. 3d 164, 170 (D. Mass. 2019) (same); *Lopez Lopez v. Charles*, No. 12-CV-101445-DJC, 2020 WL 419598, at *4 (D. Mass. Jan. 26, 2020) (same).

Section 1252(g) is "directed against a particular evil: attempts to impose judicial constraints upon [certain categories of] prosecutorial discretion." *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 485 n.9 (1999). Indeed, Petitioner's "requested relief, a stay from removal, would necessarily impose a judicial constraint on immigration authorities' decision to execute the removal order, contrary to the purpose of § 1252(g)." *Viana v. President of United States*, No. 18-CV-222-LM, 2018 WL 1587474, at *2 (D.N.H. Apr. 2, 2018), *aff'd sub nom. Viana v. Trump*, No. 18-1276, 2018 WL 11450369 (1st Cir. June 18, 2018).

The fact that Petitioner is seeking a stay of removal while USCIS adjudicates his T-visa application does not change the analysis; section 1252(g) still bars jurisdiction for this Court to order a stay. *See Arely Westley a/k/a Wilson Amilcar Velasquez-Cabellero v. Harper, et al.,* No. 25-cv-229-BWA, 2025 WL 592788 (E.D. La. Feb. 24, 2025) ("*Westley*"). Like here, the petitioner in *Westley* asked the Court to stay her removal while USCIS adjudicated her T-visa application pending with USCIS as its failure to do so would permanently strip her of such relief should she be removed before final adjudication of said application and, thus, would be violative of her Fifth Amendment Due Process rights. *Id.,* at *2. In rejecting the petitioner's claims, the Court held that an order staying removal until the petitioner's T-visa application is adjudicated falls outside the Court's jurisdiction under § 1252(g). *Id.,*at *4. *See also Suarez-Reyes v. Williams,* No. CV-20-01222-PMX-MTL-(JFM), 2020WL 3414781, at *2 (D. Ariz. June 22, 2020) (petitioner's claim that he will be deprived of an opportunity to have his T-visa applications heard at a meaningful

7

time and manner if removed is insufficient to show his due process claim is not precluded by § 1252(g)); *Marcelo Rojas v. Moore,* No. 19-cv-20855, 2019 WL 3340630, at *1 (S.D. Fla. Mar. 26, 2019) (Court agreed that no T-visa applicant has a constitutionally protected liberty interest in remaining in the United States); *Viera v. McAleenan,* No. 19-cv-05112-PHX-DWL-IZB, 2019 WL 4303417, at *4 (D. Ariz. Sept. 11, 2019) (petitioner alleges no facts to support contention that USCIS has a "clear nondiscretionary duty" to adjudicate a T-visa application before an applicant is removed).

Courts within this district and elsewhere also routinely held that Section 1252(g) bars jurisdiction to enter a stay of removal in other circumstances in which an individual seeks more time to apply for different forms of immigration relief. *See, e.g., Compere*, 368 F. Supp. 3d at 170 (D. Mass. 2019) (court barred from entering stay even though petitioner had application pending); *Viana*, 2018 WL 1587474, at *2 (D.N.H. Apr. 2, 2018); *E.L.F. v. Prim,* 986 F.3d 959, 964 (7th Cir. 2021) (petitioner's challenge to removal while she has a pending application for relief therefrom falls squarely in the path of § 1252(g)); *Garcia-Herrera v. Asher,* No. 13-35435, 585 Fed. App'x 439, 440 (9th Cir. Oct. 6, 2014) (finding that ICE's decision not to delay removal pending the adjudication of petitioner's DACA application constitutes a challenge to ICE's decision to execute a removal order and is barred from review under § 1252(g)).

Moreover, Petitioner has no right to a stay of removal under federal regulation, as the mere submission of an application seeking T nonimmigrant status has no effect on ICE's authority or discretion to execute a final order of removal. 8 C.F.R. § 214.204(b)(2)(i) ("The filing of an Application for T Nonimmigrant Status has no effect on DHS authority or discretion to execute a final order of removal…."). *See also Nicholas L. L. v. Barr,* No. 19-cv-02543-ECT-TNL, 2019 WL 4929795, at *5–6 (D. Minn. Oct. 7, 2019) (an alien subject to a final order of removal,

deportation, or exclusion may file an application for T-1 nonimmigrant status directly with USCIS. However, the filing of an application for T nonimmigrant status has no effect on DHS' authority or discretion to execute a final order of removal, although the alien may request an administrative stay of removal pursuant to 8 C.F.R. § 241.6(a)). A stay of removal is automatically granted *only* once USCIS determines that T-visa application is *bona fide.* 8 C.F.R. § 214.204(b)(2)(iii). Petitioner makes no claim that USCIS has made a *bona fide* determination of his T-visa application and any contention that the mere filing of an application runs directly contrary to the governing regulations. 8 C.F.R. § 241.204(b)(2).

At bottom, Petitioner had ample opportunity to seek stays of removal from the appropriate judicial and administrative forums. In fact, Petitioner could have sought a stay of removal from ICE by submitting a Form I-246, Application for a Stay of Deportation or Removal. https://www.ice.gov/doclib/forms/i246.pdf (last accessed Feb. 27, 2025), but, apparently, he chose not to do so. In sum, Congress did not provide authority to this Court to consider such stay requests, and in fact, specifically stripped district courts of the ability to interfere with ICE's execution of removal orders. As such, Petitioner's request for a stay of removal to be issued from this Court must be denied.[4]

---

[4] As noted in the Petition, Petitioner has twice sought review of his removal order from the BIA. *See* Dkt. No. 1, ¶ 23. The Second MTR was denied by the BIA on August 22, 2024, and Petitioner could have filed a PFR and a motion to stay removal with the First Circuit but, apparently, he chose not to do so, as nothing in the Petition mentions any such PFR filing and request for stay. *See* First Circuit Local Rule 18.0, Stay in Immigration Cases; Notification of Removal Date.

### 3. Petitioner Cannot Seek a Stay via a Writ of Habeas Corpus

The relief sought by Petitioner—a stay of removal so as to remain in the United States while an application is pending—is relief that is unavailable in habeas. This is not a challenge to the legality of Petitioner's detention. "Habeas is at its core a remedy for unlawful executive detention." *Munaf v. Geren*, 553 U.S. 674, 693 (2008). The writ of habeas corpus and its protections are "strongest" when reviewing "the legality of Executive detention." *INS v. St. Cyr*, 533 U.S. 289, 301 (2001). Therefore, the traditional function of the writ is to seek one's release from unlawful detention. *Department of Homeland Security v. Thuraissigiam*, 140 S. Ct. 1959, 1969 (2020) (citing *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973)). As the Supreme Court has held, relief other than "simple release" is not available in a habeas action. *See Thuraissigiam*, 140 S. Ct. at 1970–71 ("Claims so far outside the core of habeas may not be pursued through habeas.") (internal quotations and citations omitted).

But instead of simple release, Petitioner seeks a full stop to removal. *See generally* Pet. At 12 (seeking an "Order that Defendants not remove Petitioner from the Commonwealth of Massachusetts"). This is not the type of relief that the Supreme Court found to be subject to habeas review. *See Thuraissigiam*, 140 S. Ct. at 1970 (holding that the relief sought, which did not include release, fell "outside the scope of the common-law habeas writ"). In reversing the Ninth Circuit's decision, the Supreme Court concluded that habeas has been historically used to challenge confinement and detention. *Id.* at 1969–70. In *Thuraissigiam*, the petitioner did not seek "simple release," and if he had sought proper habeas relief, it would take the form of release "in the cabin of a plane bound for [the designated country]." *Id.* at 1970. Other circuits have followed this principle. *See, e.g., Tazu*, 975 F.3d at 300 ("And Tazu's constitutional right to habeas likely guarantees him no more than the relief he hopes to avoid—release into 'the cabin of a plane bound

10

for Bangladesh.'") (brackets omitted); *E.F.L.*, 986 F.3d at 965-66 (holding that a petitioner could not invoke an alleged Suspension violation when a petition does not contest the lawfulness of restraint or seek release from custody); *Rauda*, 55 F.4th at 780 (same as *E.F.L.*).

Though Petitioner claims to seek release from detention, in reality, Petitioner seeks to remain in the United States to pursue other immigration benefits. The Supreme Court has taken a "narrow view of habeas relief in the immigration context, which supports [a] reluctance to extend habeas relief to aliens who are released from detention." *See Bacilio-Sabastian v. Barr*, 980 F.3d 480, 483 (5th Cir. 2020) (citing *Thuraissigiam*, 140 S. Ct. at 1963). Accordingly, this Court dismiss Petitioner's Petition on this ground also.

### 4. This Court also Lacks Jurisdiction to Consider Petitioner's Claim that Removal would Violate His Due Process Rights or the APA.

Petitioner asserts that his removal from the United States before his T-visa application is adjudicated by USCIS is a violation of his Due Process rights. *See* Doc. No. 1, ¶ 47. Despite this framing, as mentioned above, this Court nonetheless lacks jurisdiction over this claim, which once again, must be presented for judicial review through a PFR to the First Circuit.

Indeed, section 1252(g) bars district court review of "any cause or claim" that arises from executing a removal order and this provision "applies to constitutional as well as statutory claims." *Candra v. Cronen*, 361 F. Supp. 3d 148, 156 (D. Mass. 2019); *see also Gomes v. Smith,* 381 F. Supp. 3d 120, 124 (D. Mass. 2019) (petitioner had "no Due Process right to remain in the United States while his administrative claims are adjudicated."); *Lopez Lopez*, 2020 WL 419598, at *4 (due process claim for failure to stay removal "does not change the jurisdiction stripping analysis under Section 1252(g)."); *Viana*, 2018 WL 1587474 at *3 ("the court disagrees that § 1252(g) does not extend to due process claims generally …. [t]he provision itself contains no such limitation"). This includes any claim that removal before USCIS adjudicates a T-visa application violates a

11

petitioner's Due Process rights.  *See Westley*, 2025 WL 592788, at *4 (E.D. La. Feb. 24, 2025); *Marcelo Rojas,* 2019 WL 3340630, at *1 (Court agreed that no T-visa applicant has a constitutionally protected liberty interest in remaining in the United States).

Similarly, the Due Process Clause does not protect a "benefit … if government officials may grant or deny it in their discretion." *Town of Castle Rock, Colo. v. Gonzales*, 545 U.S. 748, 756 (2005); *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 462-63 (1989); *see also Olim v. Wakinekona*, 461 U.S. 238, 249 (1983).  Other Circuit courts have held that "[a]n alien has no constitutionally protected right to discretionary relief or to be eligible for discretionary relief." *Yuen Jin v. Mukasey*, 538 F.3d 143, 157 (2d Cir. 2008) (quoting *Oguejiofor v. Attorney General of U.S.*, 277 F.3d 1305, 1309 (11th Cir. 2002) (emphasis omitted)); *see Smith v. Ashcroft*, 295 F.3d 425, 430 (4th Cir. 2002) (addressing former statutory immigration scheme).  For the foregoing reasons, this Court lacks jurisdiction over Petitioners' claim that a due process violation will occur if his removal order is effectuated before USCIS adjudicates his T-visa application.

Lastly, alleging an APA claim does not change the landscape for § 1252(g) purposes.  *See Taza v. Att'y Gen.,* 975 F.3d 295, 298 (3d Cir. 2020) (if claims of Due Process and APA are of consequence, it "would gut § 1252(g) because future petitioners could restyle any challenge up to the covered actions … as a challenge to the Executive's general lack of authority to violate Due Process, equal protection, the APA or other federal laws."); *E.F.L.,* 986 F.3d at 964 (noting that restyling claims would make § 1252(g) a "paper tiger"); *Rauda v. Jennings,* 55 F.4th 773, 778 (9th Cir. 2022) (regardless of how petitioner frames it, his challenge is to the Attorney General's exercise of his discretion to execute his removal order, which the court has no jurisdiction to review).

## **CONCLUSION**

For the reasons set forth above, the Petition should be denied.

                                          Respectfully submitted,

                                          LEAH B. FOLEY
                                          United States Attorney

Dated: February 28, 2025          By:    <u>*/s/ Michael Sady*</u>
                                                             MICHAEL SADY
                                                             Assistant United States Attorney
                                                             United States Attorney's Office
                                                             1 Courthouse Way, Suite 9200
                                                             Boston, MA 02210
                                                             Tel.: 617-748-3100
                                                             Email: michael.sady@usdoj.gov