UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **Fabricio Ferreira Gomes**, ) | |
| ) | Case No. 1:25-cv-10455 |
| Petitioner, ) | |
| ) | |
| v. ) | **AMENDED EMERGENCY** |
| ) | **MOTION FOR** |
| ) | **STAY OF REMOVAL** |
| ) | |
| **Antone Moniz**, Superintendent, Plymouth ) | |
| County House of Correction, **Patricia Hyde**, ) | |
| Acting Director of Boston Field Office, ) | |
| U.S. Immigration and Customs Enforcement; ) | |
| **Kristi Noem**, Secretary of the ) | |
| U.S. Department of Homeland Security; **)** | |
| ) | |
| ) | |
| Respondents. ) | |
| _____) | |

Annelise M. Jatoba de Araujo,
For Petitioner Fabricio Ferreira Gomes
Araujo & Fisher, LLC
75 Federal St, Ste 910
Boston, MA 02110
T: 617-716-6400
F: 617-716-6403

*Counsel for Petitioner*

**TABLE OF CONTENTS**

I.  INTRODUCTION ........................................................................................................... 3

II. STATEMENT OF FACTS AND PROCEDURAL HISTORY ...................................... 3

III. REASONS FOR GRANTING A STAY ....................................................................... 6

   A. Petitioner is Likely to Succeed on the Merits ................................................................ 6

   B. Absent a Stay of Removal, Petitioner Faces Irreparable Harm ................................... 10

      i. Forced deportation will pretermit Petitioner's pending I-914 Application for T Nonimmigrant Status, which requires applicants to be physically present in the United States on account of trafficking. ....................................................................................... 10

      ii. Forced deportation would adversely affect Petitioner by separating him from his family ..........................................................................................................................11

   C. The Issuance of a Stay Will Not Substantially Injure the Government, and the Public Interest Lies in Granting Petitioner's Request for a Stay of Removal ................... 12

      i. Neither the Government nor the public will be injured. ......................................... 13

IV. CONCLUSION ............................................................................................................ 14

**I.     INTRODUCTION**

Petitioner, Fabricio Ferreira Gomes (Mr. Ferreira Gomes), pursuant to Federal Rules of Appellate Procedure Rule 8 and Federal Rules of Civil Procedure Rule 62, moves this Court for an emergency stay of removal. Petitioner's Writ of Habeas Corpus and APA Claim was denied by this Court on February 28, 2025 and Petitioner subsequently filed a Notice of Appeal.

Absent a stay of removal, Mr. Ferreira Gomes would face irreparable harm as faces imminent removal from the United States, despite having been the victim of a severe form of trafficking in persons in the United States and seeking a T Nonimmigrant Visa on the basis thereof.

This Motion is sought on an emergency basis given the Immigration and Customs Enforcement's keen interest in removing all noncitizens with final orders of removal without exception.

For the reasons stated herein, Mr. Ferreira Gomes merits a stay of removal from this Court.

**II.    STATEMENT OF FACTS AND PROCEDURAL HISTORY**

Petitioner is a 47-year-old citizen of Brazil. He has two U.S. citizen daughters, aged 17 and 20, whom he has raised in this country. He has never been convicted of a crime in the United States or anywhere else.

In 2001, at the age of 23, Petitioner entered the United States without inspection and was encountered by the then-Immigration and Nationality Service and placed into removal proceedings via a Notice to Appear that did not contain a time or date of any future hearing.

He was released from custody on a bond. He did not receive the notice of hearing for his removal proceedings. His EOIR file reflects that the notice of hearing was returned to the court as undeliverable.

In 2013, Petitioner was detained by Immigration and Customs Enforcement, but released and placed on an Order of Supervision. He has complied with that Order of Supervision at all times for the past 12 years.

Petitioner has made various and ongoing efforts to address his immigration status in this country, including filing a motion to reopen his removal proceedings, appealing the denial of the motion to reopen his removal proceedings and filing a second motion to reopen his proceedings as the law regarding Notices to Appear lacking a date and time developed.

In 2024, Petitioner's immigration counsel identified that Petitioner had survived a severe form of labor trafficking, rendering him eligible to seek T nonimmigrant status pursuant to 8 U.S.C. §1101(a)(15)(T).

On January 21, 2025, Petitioner (by and through counsel) filed a detailed report regarding his experiences of labor trafficking to the U.S. Department of Labor. On January 22, 2025, Petitioner (by and through counsel) filed a form I-914 Application for T Nonimmigrant Status alongside a form I-192 Application for Advance Permission to Enter as Nonimmigrant, requesting a waiver of all applicable admissibility grounds. To date, no receipts or bona fide determination have issued. Petitioner has submitted two emails to USCIS asking for the expedited adjudication of the bona fide determination and has received no response.

On February 4, 2025, immigration counsel for Petitioner emailed ICE as a routine check-in procedure. Counsel was instructed to have Petitioner appear in person at ICE's Boston Field Office, located in Burlington, Massachusetts, on February 12, 2025 "to be enrolled into [ICE]'s CART reporting terminal." Counsel requested a brief continuance to March 4, 2025 so that she could attend the appointment with Petitioner, given a conflict on the 12th and some work-related travel scheduled for later in the month. An ICE officer responded, "That's a month after his

reporting date. He should come sooner." After further emails, it was agreed that Petitioner would check in on February 26, 2025.

On February 10, 2025, it came to Petitioner's counsel's attention that some individuals reporting in to enroll in ICE's "CART" system were in fact detained. On information and belief, two other noncitizens who reported for "CART" enrollment were taken into custody on February 10. This raises the inference that Petitioner was being called in for detention and removal.

After Petitioner filed the writ of habeas corpus and APA claim with this Honorable Court on February 25, 2025, Petitioner lawfully reported to the Boston Field Office of the Immigration and Customs Enforcement ("ICE"), as he was required to do on February 26, 2025, and as he had done for the past 12 years under an order of supervision. On February 26, 2025, Petitioner was detained by ICE immediately, and no attempt was made to register him in the CART reporting terminal.

Immediately within 15 minutes of presenting himself, he was taken to a back room where Officer Tahar Ahmed, Officer Joseph Amirault and Supervisor Alexander Durden proceeded to speak with him. Officer Ahmed asked if he was married, if he had children, and where he lived. Petitioner confirmed that he is married, that he has two USC daughters, aged 20 and 17 years old. He also confirmed his physical address. Counsel requested that he not be detained and offered to have Petitioner present himself weekly, as ICE demanded.

Counsel asked to speak with the Field Office Director, and initially the supervisor said that the Field Office Director was in meetings all morning, but Counsel could speak with an assistant Field Office Director. Shortly thereafter, the supervisor informed Counsel that nobody was available to speak to Counsel all day. Counsel then questioned whether the decision to detain a T Visa applicant had been discussed with the Office of the Principal Legal Advisor

("OPLA"). They stated that they had consulted with OPLA. Counsel asked whether the T Visa was considered, because it seemed as though the officers were not aware that a T Visa had been pending. The Supervisor said that information was provided to them in the habeas petition and that it was their guidance, instruction, and policy to detain all individuals with final orders of removal without any exception.

Petitioner filed an Emergency Motion for relief and after hearing oral argument on the Motion, denied Petitioner's motion and writ of habeas corpus. Petitioner filed a Notice to Appeal and now seeks a Stay of removal.

### III.   REASONS FOR GRANTING A STAY

Adjudication of a motion for stay of removal requires that the Court consider four factors: (1) whether the stay applicant demonstrates a strong likelihood of success on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceedings; and (4) where the public interest lies." Nken v. Holder, 556 U.S. 418, 434 (2009). In Mr. Ferreira Gomes' case, all four factors counsel granting a stay.

#### A. Petitioner is Likely to Succeed on the Merits

The first showing a stay petitioner must make is "a strong showing that he is likely to succeed on the merits." See Nken, 129 S.Ct. at 1760-61 (quoting Hilton, 481 U.S. at 776, 107 S. Ct. 2113) (quotation marks omitted). A stay may be issued upon "demonstrat[ion] [of] a substantial case on the merits," so long as the other factors support the stay. Hilton, 481 U.S. at 778, 107 S.Ct. 2113. With regard to the likelihood of success factor, Nken said only that "[i]t is not enough that the chance of success on the merits be 'better than negligible,' and that '[m]ore than a mere possibility of relief is required." 129 S.Ct. at 1761 (citations omitted).

8 U.S.C. § 1252(g) does not apply to this case because Petitioner brings a programmatic challenge to ICE polies and procedures and 8 U.S.C. § 1252(g) applied only to the decision to execute a removal order in an individual case. Multiple decisions in the Ninth Circuit support the Plaintiff's argument insofar as it concerns constitutional due process challenges to policies and practices. For example, the Ninth Circuit has repeatedly appreciated the distinction between challenges to individual decisions covered by Section 1252(g) and broader due process challenges to policies and procedures employed by immigration officials. Section 1252(g) does not apply to challenges that "do[ ] not arise from a 'decision or action by the Attorney General to commence proceedings' ... but instead constitute 'general collateral challenges to unconstitutional *practices and policies* used by the agency.'" *Walters v. Reno*, 145 F.3d 1032, 1052 (9th Cir. 1998) (emphasis added); *see also Catholic Soc. Servs. v. INS*, 232 F.3d 1139 (9th Cir. 2000) (same); *Barahona-Gomez*, 167 F.3d at 1234 (same). The Ninth Circuit has further cautioned that "any legislation that completely immunizes an agency's practices and procedures from due process challenges 'would raise difficult constitutional issues.'" *Walters*, 145 F.3d at 1052 (quoting *Catholic Soc. Servs. v. Reno*, 134 F.3d 921, 927 (9th Cir. 1997)).

In this case, the officers that detained Petitioner were clear and stated to Petitioner and Counsel present with Petitioner at the time of his detention that they lacked discretion to not detain Petitioner. Petitioner is challenging ICE's apparent blanket policy that it will remove all individuals with prior removal orders without consideration to the underlying fact and circumstances. Additionally, Petitioner is challenging the timing of the execution of his removal order, rather than the fact that ICE is choosing to execute it. ICE should allot the T visa adjudication (or at least the bona fide determination) to occur is very different than seeking to permanently impede removal and stay in the United States.

This is a distinct situation from the one presented in the *Department of Homeland Security v. Thuraissigiam* in that the Petitioner in this case has been present in the United States for the last twenty years, does not have an expedited order of removal, and has an affirmative application for relief pending before USCIS. 140 S.Ct. 1959 (2020). The petitioner is not seeking an admission as a matter of grace; rather, he is only seeking a temporary stay to preserve his liberty rights under the Due Process Clause of the Fifth Amendment that were created by the T Visa statutes and regulations, which permit him to receive a T Visa despite a final order of removal. The Petitioner has put forth a legal claim in violation of the Administrative Procedures Act (APA), 5 U.S.C. § 706(2)(A). A court reviewing agency action "must assess . . . whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment"; it must "examin[e] the reasons for agency decisions—or, as the case may be, the absence of such reasons." *Judulang v. Holder*, 565 U.S. 42, 53 (2011) (quotations omitted).

The Petitioner's specific request for relief was unlike Thuraissigiam where the Respondent was seeking admission into the United States. Petitioner's merely seeking a to have his liberty right preserved and his T visa application can be adjudicated. As the majority said in Thuraissigiam, a writ of habe "as it existed in common law provided a vehicle to challenge all manner of detention by government officials, and the Court had held long before that the writ could be invoked by aliens already in this country who were held in custody pending deportation. St. Cyr reaffirmed these propositions." 140 S.Ct. at 1981 (citing INS v. St. Cyr, 533 U.S. 289 (2001). The Petitioner in this case was already in the country.

In *Thuraissigiam* what the Court said is that "fair procedure to apply for asylum, withholding of removal and Convention Against Torture is not protected by the Suspension Clause." *Id.* This does not foreclose the application of the suspension clause to all removal related

challenges. The Petitioner in this case is challenging the execution (and policies and procedures exercised by ICE) of his removal order prior to the adjudication of his T visa application.

*Thuraissigiam* did not overturn *St. Cyr*, which was a case in which the Supreme Court applied the suspension clause in a case involving removal. *Thuraissigiam* held that a challenge by someone who doesn't seek release from detention and just seeks a "fair procedure to apply for asylum" while he remains detained is not asserting a claim protected by the Suspension Clause, but it cannot stand for the proposition that the Suspension Clause is categorically inapplicable to challenges that involve removal.

The Petitioner in this case is also seeking release from detention as well. In *Thuraissigiam* the Respondent was subject to Mandatory detention. The Petitioner in this case it's not. His detention and removal are contrary to the liberty right that he has as a result of the T visa statute and regulations and Congress' intent when promulgating the T visa statute and DHS's publicly stated regulations and policies.

Again, Petitioner is not challenging his 2001 final removal order, the Petitioner is simply seeks to ensure the adjudication of a bona fide determination pursuant to his T visa petition by USCIS, which is a right afforded to him pursuant to the T Visa regulations. *See* 8 C.F.R. § 214.205(a) ("If an Application for T Nonimmigrant Status is submitted on or after August 28, 2024, USCIS will conduct an initial review to determine if the application is bona fide"). Therefore 8 USC 1252(g) does not apply in this matter.

A review for a bona fide application is a low threshold; USCIS deems an application bona fide if: "The applicant has submitted and properly filed a complete Application for T Nonimmigrant Status; the applicant has submitted a signed personal statement; and the results of

initial background checks are complete, have been reviewed, and do not present national security concerns." 8 C.F.R. § 214.205((a)(2)(i)-(iii).

Furthermore, petitioner has also challenged his detention in view of ICE's violations of the requirements under 8 C.F.R. 241.4 by failing to provide Petitioner notice of the revocation of his relief and an opportunity for him to challenge the release. Further by communicating with him outside the presence of his attorney, intimidating him by stating to him that they would face criminal consequences is he did not sign documents ICE requested him to sign, and questioning him about documentation related to his removal case without his attorney being present. Even if these arguments were wrong and 1252(g) applies, the suspension clause would preserve jurisdiction over these claims.

B. **Absent a Stay of Removal, Petitioner Faces Irreparable Harm**

Along with the likelihood of success on the merits, the irreparable injury inquiry is one of "the most critical" factors in adjudicating stay applications. Nken, 556 U.S. at 433. Absent a stay of removal, Petitioner will suffer irreparable harm for two main reasons. First, if deported, Petitioner's pending I-914 Application for T Nonimmigrant Status is pretermitted by operation of law, foreclosing the only viable form of relief that he has at the present. Second, deportation would adversely affect Petitioner and his family, including his wife and his two United States Citizen children, who are dependent upon Petitioner for financial and emotional support.

> i. **Forced deportation will pretermit Petitioner's pending I-914 Application for T Nonimmigrant Status, which requires applicants to be physically present in the United States on account of trafficking.**

Petitioner's removal from the United States would render Petitioner's I-914 Application for T nonimmigrant status pretermitted by operation of law as he would not be able to satisfy the

physical presence requirement in the statute. The Trafficking Victims Protection Act provides that survivors of human trafficking in persons may be eligible for nonimmigrant status if the applicant:

> (I) is or has been a victim of a severe form of trafficking in persons, as defined in section 7102 of title 22;
> (II) is physically present in the United States, American Samoa, or the Commonwealth of the Northern Mariana Islands, or at a port of entry thereto, on account of such trafficking, including physical presence on account of the alien having been allowed entry into the United States for participation in investigative or judicial processes associated with an act or a perpetrator of trafficking;
> (III)    (aa) has complied with any reasonable request for assistance in the Federal, State, or local investigation or prosecution of acts of trafficking or the investigation of crime here acts of trafficking are at least one central reason for the commission of that crime; (bb) in consultation with the Attorney General, as appropriate, is unable to cooperate with a request described in item (aa) due to physical or psychological trauma; or (cc) has not attained 18 years of age; and
> (IV) the alien 2 would suffer extreme hardship involving unusual and severe harm upon removal.

INA §101(a)(15)(T). If Respondent were to be removed from the United States prior to the final adjudication of his T visa application, he will no longer be able to satisfy the physical presence requirements.

### ii. Forced deportation would adversely affect Petitioner by separating him from his family

The specific facts of Petitioner's case demonstrate that Petitioner would suffer irreparable injury if forced to separate from his family here in the United States. Fabricio entered the United States in 2001 at only 23 years old and has remained here in the United States ever since. Since his arrival, he married his wife, Flavia Dorgal Gomes, and the couple have two U.S. Citizen children, Ayla de Souza Gomes (DOB: August 5, 2004) and Agatha de Souza Gomes (DOB: October 28, 2007). Ayla currently attends Wentworth University in Massachusetts, and Petitioner and his wife are able to help her pay her tuition; their younger daughter is 17 and looking at colleges now. Additionally, Petitioner has started his own business to support his family. Due to Petitioner's victimization and the devastating financial consequences thereof, Petitioner and his wife made the

difficult decision to send their daughters to Brazil while he recovered financially. They have since improved their economic conditions and their daughters returned to live with them in the United States. They have been able to work on recovering as a family from the trauma of being separated due to Fabricio's trafficking. Now, Fabricio has been in the United States for more than 20 years and has no ties that he could utilize if he had to return to Brazil; his wife also has not lived in Brazil in more than two decades, and similarly has no professional connections to Brazil. Removal from the United States would result in irreparable harm to Petitioner and Petitioner's family, who are already familiar with, and have suffered from, separation from one another.

For these reasons, the unique and substantial harms that the Petitioner will suffer if removed to Brazil is qualitatively different from the harm that a petitioner would ordinarily suffer. Thus, Petitioner has shown that irreparable injury is the more probable or likely outcome.

### C. The Issuance of a Stay Will Not Substantially Injure the Government, and the Public Interest Lies in Granting Petitioner's Request for a Stay of Removal

The Court found in Nken that the last two stay factors, injury to the other parties in the litigation and the public interest, merge in immigration cases because Respondent is both the opposing litigant and the public interest representative. Nken, 556 U.S. at 435. Additionally, there is public interest in the "prompt execution of removal orders," which is heightened where the noncitizen "is particularly dangerous." Id. Moreover, the Nken Court also recognized the "public interest in preventing [noncitizens] from being wrongfully removed," which must weigh heavily in the Court's consideration. See Nken. 556 U.S. at 436. Here, neither these factors, nor any other factors, exist to suggest that the Respondent or the public have any interest in Petitioner's removal beyond the general interest noted in Nken.

i. **Neither the Government nor the public will be injured.**

Petitioner is a 47-year-old native and citizen of Brazil with a viable form of relief available to him, strong family ties in the United States, and no criminal convictions. The Government will not be injured because there are significant options by which to release him with conditions such as GPS monitoring, more frequent check-ins, and all other means employed by the agency. Petitioner is not a flight risk as he has complied with all check-ins under his Order of Supervision for the last 12 years. He is seeking an affirmative form of relief with USCIS as the victim of a severe form of trafficking in persons. He has never missed an appointment with ICE or violated his Order of Supervision in any way. Additionally, he is the main provider for his wife and his two United States Citizen children. He is willing to comply with alternatives to detention such as more frequent check-ins, or GPS monitoring.

The public interest lies in releasing Petitioner, as removing victims of human trafficking will have a chilling effect on the investigation and prosecution of trafficking within the United States. Congress' intention with the TVPRA was to "combat trafficking in persons by ensuring just and effective punishment of traffickers and by protecting the victims of trafficking in persons." The congressional intent in providing protection to immigrant survivors of trafficking within the US was to compel victims to come forward, as their reluctance to cooperate with law enforcement drastically impacted the government's ability to combat human trafficking. Moreover, the public interest lies in the protection afforded to victims who bravely choose to come forward and identify as survivors and cooperate with the investigation thereof.

Respondent, accordingly, cannot make any particularized showing that granting Petitioner a stay of removal would substantially injure its interests or conflict with the public interest in preventing a wrongful removal.

## IV.     CONCLUSION

For these reasons, the Court should grant this motion for a stay of removal.

                                                                                                  Respectfully submitted,

Dated: February 28, 2025                    By:     */s/ Annelise M. J. de Araujo*
                                                                          Annelise M. J. de Araujo,
                                                                           for Petitioner Fabricio Ferreira Gomes
                                                                           B.B.O. No. 669913
                                                                           Araujo & Fisher, LLC
                                                                           75 Federal St., Ste 910
                                                                           Boston, MA 02110
                                                                           (617) 716 - 6400
                                                                           annelise@araujofisher.com

## CERTIFICATE OF SERVICE

I hereby certify that on February 28, 2025, I caused the foregoing Petitioner's Motion to Stay Order of Removal to be electronically filed with the Clerk of the Court for the United States Court of Appeals for the First Circuit using the Court's Appellate Case Management System (ACMS). I certify that all participants in the case are registered CM/ECF users and that service will be accompanied by the appellate CM/ECF system.

/s/ Annelise M. J. de Araujo

Annelise M. J. de Araujo,
for Petitioner Fabricio Ferreira Gomes
B.B.O. No. 669913
Araujo & Fisher, LLC
75 Federal St Ste 910
Boston MA 02110
(617) 716 - 6400
annelise@araujofisher.com

**CERTIFICATE OF COMPLIANCE**

Pursuant to Fed. R. App. P. 32(g)(1), I certify that this motion complies with the type-volume limitation of Fed. R. App. P. 27(d)(2)(A), because it contains 3,221 words, excluding the parts of the motion exempted by Fed. R. App. P. 32(f).

*/s/ Annelise M. J. de Araujo*
_____
Annelise M. J. de Araujo,
for Petitioner, Fabricio Ferreira Gomes